**David SAB, Appellant**

**v.**

**Kathryn HAWKINS–SAB, Appellee**

**No. 04–15–00477–CV**

Court of Appeals of Texas,
San Antonio.

Delivered and Filed: January 13, 2016

David Sab, pro se.

Demetrio Duarte Jr., Demetrio Duarte, Jr. & Associates, P.C., San Antonio, TX, Appellee Attorney.

Sitting: Rebeca C. Martinez, Justice, Patricia O. Alvarez, Justice, Luz Elena D. Chapa, Justice

## OPINION

Opinion by: Rebeca C. Martinez, Justice

Appellant David Sab appeals the trial court's order finding him not indigent and denying his request for a free record on appeal. We conclude the trial court did not abuse its discretion in sustaining appellee Kathryn Hawkins–Sab's contest to Sab's affidavit of indigence and we affirm the trial court's order.

### BACKGROUND

The trial court entered a final decree of divorce between David Sab and Kathryn Hawkins–Sab on April 15, 2015. Sab did not appear for the final hearing. He filed a motion for new trial which was considered by the trial court at a hearing and ultimately denied. Sab, proceeding pro se, filed a timely notice of appeal and affidavit of indigence. Hawkins–Sab filed a contest to the affidavit of indigence. The trial court conducted a hearing on the contest, and Sab testified. At the conclusion of the hearing, the trial court sustained the contest to Sab's claim of indigence. Thereafter, the court signed a general order sustaining Hawkins–Sab's contest and denying Sab a free appellate record. Sab filed a motion appealing the court's order denying him indigent status. On appeal, Sab asserts that he has no income and no assets to sell because he does not have any of the separate or community assets he was awarded in the divorce decree and many of such assets never existed, no longer exist, or are encumbered by an IRS lien.

### ANALYSIS

We review a trial court's order sustaining a contest to an affidavit of indi-

gence for an abuse of discretion. *White v. Bayless,* 40 S.W.3d 574, 576 (Tex.App.—San Antonio 2001, pet. denied). When a contest is filed, the affiant bears the burden to prove his indigence by a preponderance of the evidence. TEX. R. APP. P. 20.1(g); *Higgins v. Randall Cnty. Sheriff's Office,* 257 S.W.3d 684, 686 (Tex.2008); *Basaldua v. Hadden,* 298 S.W.3d 238, 241 (Tex.App.—San Antonio 2009, no pet.) (per curiam). The test for determining indigence is whether the record as a whole shows by a preponderance of the evidence that the affiant would be unable to pay all or part of the costs, or give security for the costs, "if he really wanted to and made a good-faith effort to do so." *Higgins,* 257 S.W.3d at 686; *Basaldua,* 298 S.W.3d at 241.

■ Sab had the burden to prove by a preponderance of the evidence that he cannot pay the costs of appeal, including the costs of preparing the clerk's record and reporter's record. In his affidavit of indigence, Sab states that he is unemployed and has no income; the only real or personal property he owns is a horse trailer and his personal clothing; he has a negative balance in his checking account; and he has no personal assets (other than the horse trailer and clothing) and no corporate assets from his business entity Pro South Construction. Sab states that his current debts and liabilities consist of: (i) an Internal Revenue Service lien of $128,000 "with exposure to an additional $279,000;" and (ii) personal judgments against him totaling $165,000; and corporate and personal debt of $180,000. Finally, Sab states that he has no ability to obtain a loan for the costs of an appeal, and no attorney is providing free legal services or has agreed to pay or advance the costs of an appeal. *See* TEX. R. APP. P. 20.1(b) (requirements of affidavit of indigence).

At the hearing on the contest, Sab testified that he has already sold everything he can, and there is "nothing left to sell." Sab stated he has always been self-employed in the construction business, but due to the IRS lien against the assets of his company, Pro South Construction, he has "no resources to start a new business." Sab testified that he is unemployed and looking for a job; he has been staying with a friend for free. Sab acknowledged that the property division contained in the divorce decree listed substantial assets belonging to him worth $239,000 "on paper," but he stated that he does not have title to, or possession of, any of those assets. Sab stated that several of the listed assets were never owned by either him, Hawkins–Sab, or the corporation. Several pieces of equipment, including a pressure washer and backhoe, were rented or borrowed, and others, such as a welder's truck belonged to third parties. Sab stated other assets belong to the corporation and are therefore encumbered by the IRS lien and may not be sold to pay the costs of his appeal. Sab admitted having possession of one horse trailer but stated that it is registered in the corporation's name, and thus encumbered by the IRS lien, and is also encumbered by a $200,000 loan. Still other assets listed as Sab's are encumbered by liens or loans, or have been repossessed. Sab stated the truck he is driving was awarded to Hawkins–Sab in the divorce decree. He testified the other vehicles listed as belonging to him have either already been sold or were repossessed. When asked whether he tried to obtain possession of a hunting Jeep located at Hawkins–Sab's grandparents' house, Sab stated that he has not attempted to pick it up because he is not welcome there. When questioned about several firearms listed in the decree as belonging to Sab, he testified he did not know he owned them,

had "no idea" where they came from, and "no idea" what they are worth.

The only documentary proof Sab presented of any of the claimed encumbrances against his assets was evidence of the IRS lien against the company. A copy of an IRS notice of tax lien filed on April 14, 2014 in the amount of $100,497 against Pro South Construction was admitted, along with an IRS notice that the outstanding tax debt against the corporation was $117,977.28 as of May 8, 2015. Sab testified there is also an IRS lien against his personal assets in the amount of $373,000, but he did not provide any documentation of that lien, which he stated he is in the process of appealing. Sab also testified there are $38,000 in judgments against him personally. Sab provided no documentary proof of those judgments, or of any of the other loans, liens, and repossessions he described against the various other assets. He also provided no documentary proof to establish which specific assets are registered in the corporation's name. Finally, Sab conceded that he did not contact the trial court clerk and court reporter to find out the cost for preparing the clerk's record and reporter's record. Sab testified to his belief that the filing fee for the appeal was $125.

Based on our review of the record before us, we cannot say the trial court abused its discretion in sustaining the contest to Sab's affidavit of indigence. In making its ruling, the trial court made several findings with respect to Sab's ability to pay for the costs of appeal, including that "there are assets that he does own that are available for his disposal that he has not obtained possession of; specifically, the Jeep and the firearms which has been represented to the Court that they will be made readily available to him." At

the hearing, counsel for Hawkins–Sab represented to the court that she was willing to turn over the Jeep and firearms in her possession which would enable Sab to sell the items and use their proceeds to pay for the cost of his appeal. Counsel for Hawkins–Sab represented at the end of the hearing that the vehicle and guns would be "promptly" delivered to the sheriff's office where Sab could pick them up. The record contains nothing to show that the assets were not delivered to the sheriff's office, and Sab has made no contention that he was unable to obtain possession of them.

In addition, the trial court found that Sab also had other assets available for his disposal, if necessary, including two computers and a horse trailer as well as other items that he left behind in the Bandera residence and never went back to pick up. At the hearing, Sab admitted having possession of a Mac computer and a black laptop, but claimed the laptop no longer worked and was worth only $50. Sab disputed the $2,000 value assigned in the decree to the Mac computer, and stated it cost only $1,100.[1] As noted, Sab admitted having possession of the horse trailer, but stated it was encumbered by the IRS lien against the corporation. However, Sab presented no documentary proof that the horse trailer was a corporate asset subject to the IRS lien and the trial court could have disbelieved Sab's testimony on this issue. With respect to the items he left at the Bandera residence, Sab testified that he has "no idea" what personal property belonging to him was still at the residence, or in storage, because he left with "the clothes on his back" the day he was served and has not returned to the house, which he stated was ultimately repossessed.

1. The divorce decree recites a finding by the court that Sab refused to provide an inventory and appraisal of his assets during the divorce proceeding.

The trial court also found that Sab was able to procure funds for expenses related to the case in the past, including recently employing an attorney to file a motion for new trial and making a representation under oath at the motion for new trial hearing that he (Sab) could pay the expenses incurred by Hawkins–Sab, including $4,500 in attorney's fees, in the event a new trial was granted. The record supports this finding. Sab admitted that he borrowed $2,500 to hire counsel to represent him in his attempt to obtain a new trial. Sab agreed that he stated under oath at the motion for new trial hearing on June 3, 2015 that he could pay Hawkins–Sab's expenses if the court granted him a new trial. Sab filed his affidavit of indigence only three weeks later, on June 24, 2015. Sab explained at the indigence hearing that his representation that he could pay $4,500 in expenses in the event of a new trial was based on him obtaining the "missing" assets he was awarded in the divorce decree so he could pledge or dispose of them. Finally, the trial court made a finding that Sab is "able-bodied and is capable of being gainfully employed if he chose to do so."

The failure by a person claiming indigence to make a real attempt to obtain or find assets that could be used to provide funds for paying for the appellate record constitutes evidence that a good-faith effort has not been made, and a trial court does not abuse its discretion in sustaining a contest based on such evidence. *See White*, 40 S.W.3d at 576. The record here supports the trial court's fact findings and conclusion that Sab has failed to make a good-faith effort to obtain funds to pay the costs of appeal, or even a part thereof. Because the evidence does not show that Sab "would be unable to pay the costs, or a part thereof, if he really wanted to and made a good-faith effort to do so," the trial court did not abuse its discretion in sustaining the contest to his claim of indigence. *See Higgins*, 257 S.W.3d at 686; *see also Basaldua*, 298 S.W.3d at 241. Therefore, Sab is not entitled to proceed on appeal without the payment of costs. *See* Tex. R. App. P. 20.1(g), (n).

Based on the foregoing reasons, we hold the trial court did not abuse its discretion in sustaining the contest to Sab's claim of indigence and we affirm the trial court's order. Sab is therefore ordered to (1) pay, or make arrangements to pay, for the clerk's record and the reporter's record *within fifteen days* from the date of this opinion and to (2) file written verification of such payments or payment arrangements with this court no later than the 15th day after the date of this opinion. We caution Sab that failure to pay for the reporter's record will result in this appeal being submitted without a reporter's record. *See* Tex. R. App. P. 37.3(c). We further caution Sab that failure to pay for the clerk's record will result in dismissal of the appeal without further warning from this court. *See* Tex. R. App. P. 37.3(b), 42.3(b), (c).